IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF GEORGIA
STATESBORO DIVISION

MIGUEL JACKSON and KELVIN       *
STEVENSON,                      *
                                *
        Plaintiffs,             *       CIVIL ACTION NO.
                                *       CV 612-113
        v.                      *
                                *
JOSEPH CATANZARITI, et al.,     *
                                *
        Defendants.             *

---

**O R D E R**

---

Plaintiffs Miguel Jackson and Kelvin Stevenson filed this action pursuant to 42 U.S.C. § 1983 on December 10, 2012. The case arises out of an alleged unlawful beating that Plaintiffs received at Smith State Prison in Glennville, Georgia, on December 31, 2010. Plaintiffs amended their complaint on January 25, 2013. The amended complaint is the operative complaint in the case. (Doc. 24.) Plaintiffs have named 39 individuals from Smith State Prison as Defendants. Presently, two of the defendants, Defendants Derius Attical and Joshua Eason, have filed motions for judgment on the pleadings contending that Plaintiffs have failed to exhaust administrative remedies against them. The motions are ripe for consideration.

## I. LEGAL STANDARD

The legal standards applicable to Federal Rule of Civil Procedure 12(c) motions for judgment on the pleadings and Rule 12(b)(6) motions to dismiss are the same. Roma v. Outdoor Creations, Inc. v. City of Cumming, Ga., 558 F. Supp. 2d 1283, 1284 (N.D. Ga. 2008) ("A motion for judgment on the pleadings is subject to the same standard as is a Rule 12(b)(6) motion to dismiss.") A motion for judgment on the pleadings, like a motion to dismiss, does not test whether the plaintiff will ultimately prevail on the merits of the case. Rather, it tests the legal sufficiency of the complaint. Scheur v. Rhodes, 416 U.S. 232, 236 (1974). Therefore, the court must accept as true all facts alleged in the complaint and construe all reasonable inferences in the light most favorable to the plaintiff. See Hoffman-Pugh v. Ramsey, 312 F.3d 1222, 1225 (11th Cir. 2002). The court, however, need not accept the complaint's legal conclusions as true, only its well-pled facts. Ashcroft v. Iqbal, 556 U.S. 662, 677-79 (2009).

A complaint also must "contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'" Id. at 678 (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). The plaintiff is required to plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for

the misconduct alleged." <u>Id.</u> Although there is no probability requirement at the pleading stage, "something beyond . . . mere possibility . . . must be alleged." <u>Twombly</u>, 550 U.S. at 556-57 (citing <u>Durma Pharm., Inc. v. Broudo</u>, 544 U.S. 336, 347 (2005)). When, however, on the basis of a dispositive issue of law, no construction of the factual allegations of the complaint will support the cause of action, dismissal of the complaint is appropriate. <u>See Executive 100, Inc. v. Martin Cnty.</u>, 922 F.2d 1536, 1539 (11th Cir. 1991).

## II. BACKGROUND

On December 31, 2010, Smith State Prison officials performed a "shake down" of the dormitory that housed Plaintiffs. (Am. Compl., Doc. 24, ¶ 13.) During that time, Defendant Joseph Catanzariti struck Plaintiff Jackson after the two exchanged words, and then Defendant Catanzariti lifted Plaintiff Jackson up, with the help of other defendants, as if he were going to throw him over the second floor rail. (<u>Id.</u> ¶ 16.) After placing him in handcuffs, Defendant Catanzariti repeatedly struck Plaintiff Jackson in the face with an object (the back end of a flash light or hammer). (<u>Id.</u> ¶ 19.) This beating is allegedly on video. (<u>Id.</u>) Defendants continued to strike Plaintiff Jackson while he was escorted outside the dormitory and to the medical unit. (<u>Id.</u> ¶ 21.) Defendant

Catanzariti repeatedly hit Plaintiff Jackson in the face with a hammer, and another defendant beat him with a night stick. (Id. ¶ 22.) While in the medical unit, Defendant Catanzariti threatened Plaintiff Jackson if he mentioned the beating and hit him a few more times. (Id. ¶ 27.) Plaintiff Jackson suffered head injury, a broken nose, fractured teeth, multiple lacerations to the face, contusions, swelling to his eyes and trauma to his ear canal. (Id. ¶ 29.) Plaintiff Jackson continues to suffer effects from the injuries sustained on that day. (Id.)

During this same event, Defendant Catanzariti also repeatedly struck Plaintiff Stevenson with a hammer while he was handcuffed, on the ground, and with a 300-pound officer sitting on him. (Id. ¶ 17.) Other defendants beat and kicked Plaintiff Stevenson at the same time. (Id. ¶ 18.) This beating is allegedly on video. (Id.) Plaintiff Stevenson was taken to the medical unit, but while there, Defendants punched him in the face with handcuffs. (Id. ¶ 26.) Plaintiff Stevenson suffered head injury, concussion, a broken jaw, multiple lacerations, a broken nose, swelling to the eyes and trauma to his ear canal. (Id. ¶ 28.) Plaintiff Stevenson continues to suffer effects from the injuries sustained on that day. (Id.)

In their § 1983 amended complaint, Plaintiffs have

4

brought a claim (Count I) for violation of their Eighth Amendment right to be free from cruel and unusual punishment. Plaintiffs allege that all Defendants either participated in the beatings or failed to take reasonable steps to immediately stop the illegal beatings, or both. Plaintiffs have also brought a claim (Count II) for supervisory liability against Defendants Catanzariti, Eason and Andrew McFarlane.

The case was stayed for over three years because of the state criminal charges brought against Plaintiffs for their conduct in the prison disturbance that occurred on that day. (See Doc. 81, 118.) Now, discovery in the case is ongoing and being actively monitored by the United States Magistrate Judge. A Joint Status Report submitted to the Court on March 7, 2017 shows that the parties are discussing the dismissal of several defendants; however, the movants here are not among those listed. (See Doc. 174.)


### III. LEGAL ANALYSIS

Section 1983 creates a federal remedy for the deprivation of federal rights. Wideman v. Shallowford Community Hosp., Inc., 826 F.2d 1030, 1032 (11th Cir. 1987). An actionable § 1983 claim requires proof of a deprivation of rights, privileges or immunities secured by the Constitution and laws of the United States and that the deprivation was by a person

or persons acting under color of law.[1] <u>Id.</u> Here, Plaintiffs claim that Defendants subjected them to cruel and unusual punishment in violation of the Eighth Amendment made applicable to the States by the Fourteenth Amendment. <u>See</u> <u>Campbell v. Sikes</u>, 169 F.3d 1353, 1374 (11th Cir. 1999) (stating that the Eighth Amendment's proscription against cruel and unusual punishment governs the amount of force that prison officials are entitled to use against inmates); <u>Bennett v. Parker</u>, 898 F.2d 1530, 1532 (11th Cir. 1990) ("The eighth amendment prohibition against cruel and unusual punishment is triggered when a prisoner is subject to a[n] 'unnecessary and wanton infliction of pain.'" (quoted source omitted)).

In order to seek relief, however, a prisoner must first exhaust administrative remedies before filing suit in federal court. <u>Porter v. Nussle</u>, 534 U.S. 516, 524 (2002). More specifically, under the Prison Litigation Reform Act ("PLRA"), "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law . . . until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a).

Through their motions for judgment on the pleadings, Defendants Eason and Attical contend that Plaintiffs did not

---

[1] There is no dispute that Defendants acted under color of state law.

exhaust their administrative remedies against them because their prison grievances do not identify them. In <u>Jones v. Bock</u>, 549 U.S. 199, 218 (2007), the United States Supreme Court explained that "[t]he level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." Thus, this Court must look to the Smith State Prison's requirements to determine whether Plaintiffs complied with its grievance procedure.

The Standard Operating Procedure for prisons operated by the Georgia Department of Corrections requires a prisoner to use its grievance form to grieve his complaints. In turn, the Grievance Form informs the prisoner as follows: "This form must be completed in blue or black ink. You must include specific information concerning your grievance to include dates, *names of persons involved*, and witnesses."[2] (Def. Eason's Br. in Supp. of Mot. for J. on the Pleadings, Doc. 132, Exs. 1 & 2 (emphasis added).) Here, Defendants Eason and

---

[2] Plaintiffs argue in part that they were not required to provide the names of persons involved because such requirement appears on the Grievance Form as opposed to in the Standard Operating Procedures ("SOP") of the Georgia Department of Corrections. (Doc. 135, at 13-14; Doc. 142, at 13-14.) This argument is without merit; the Grievance Form is explicitly identified within and appended to the SOP. Its use is a required step in the exhaustion process and is therefore an integral part of the grievance procedure.

Attical complain that Plaintiffs' grievances fail to mention them by name or any description of events or conduct that could reasonably identify them.

Plaintiff Jackson's grievance form reads as follows:

> On 12/31/10 after regaining control of a disturbance in D-2 Dorm, Smith State Prison. While han[d]cuffed and subdued with mace. Sgt. Joseph Catanzai (sic) and escort off. repeatedly beat me in the head, face, and body with a hammer and blackjack all the way to the medical door. Inside medical waiting room officers continued to punch and kick me.

(Id., Ex. 1.) Plaintiff Jackson requests "criminal charges brought upon all officers that participated!" (Id.)

Plaintiff Stevenson's grievance form reads as follows:

> 12-31-10 at D2 Dormitory, Petitioner was assaulted by Lt. McFarland (sic) and Sgt. Cantarzati (sic) 2nd shift along with numerous other officers, while handcuffed in restraints. Said officers assaulted me numerous times with a metal hammer and handcuffs which were used as brass knuckles . . . . Said incident was witnessed by Micheal (sic) Briscoe and numerous persons of Smith S.P. (Grady Williams).

(Id., Ex. 2.) Plaintiff Stevenson requests "[c]riminal and civil charges to be brought against said officers . . . ." (Id.)

The Eleventh Circuit addressed a similar question to the one presented here in Brown v. Sikes, 212 F.3d 1205 (11th Cir. 2000). The question before the Brown court was "whether the § 1997e(a) exhaustion requirement always prohibits a prisoner from suing any defendant other than those named in the administrative grievance the prisoner filed." Id. at 1207.

The Eleventh Circuit unequivocally held that it does not. Rather, the prisoner need only provide "all the relevant information he has, including the identity of any officials he thinks have wronged him and any witnesses." Id. at 1208. The court reasoned that a prisoner cannot identify those whose identities are unknown to him and that the PLRA did not intend to "shut[] the courthouse door to a prisoner who, at the time he filed his grievance, did not know and could not readily ascertain the identity of the individuals responsible for the alleged injury or deprivation." Id. The United States Supreme Court did not change this analysis in Jones v. Bock, 549 U.S. 199, but rather supported the Brown rationale when it held that nothing in the PLRA "imposes a 'name all defendants' requirement" upon a prison grievance form. Id. at 217. Importantly, the Jones Court concluded that the level of detail required in a prison grievance would vary not only from system to system but from "claim to claim" as well. Id. at 218; see also id. at 219 ("[E]xhaustion is not per se inadequate simply because an individual later sued was not named in the grievances. We leave it to the court below in the first instance to determine the sufficiency of the exhaustion in these cases.").

In reviewing Plaintiffs' grievances in this case, the Court is mindful of the purposes behind the exhaustion

9

requirement. The exhaustion requirement "eliminate[s] unwarranted federal-court interference with the administration of prisons" and allows "'corrections officials time and opportunity to address complaints internally before allowing initiation of a federal case.'" Woodford v. Ngo, 548 U.S. 81, 93 (2006) (quoted source omitted); see also Jones v. Bock, 549 U.S. at 204 ("Requiring exhaustion allows prison officials an opportunity to resolve disputes concerning the exercise of their responsibilities before being haled into court."); Toennings v. Ga. Dep't of Corr., 600 F. App'x 645, 649 (11th Cir. 2015) ("The critical function of the grievance process is that it provides the institution with notice of a problem such that they have an opportunity to address the problem internally.") (citing with approval Brown, 212 F.3d at 1209-10, for the proposition that "[e]xhaustion of the grievance procedure does not require that every single defendant be identified by name").

The Court has also considered the cases cited by the parties to include Parzyck v. Prison Health Servs., 627 F.3d 1215 (11th Cir. 2010). In Parzyck, the Eleventh Circuit concluded that a prison grievance form that did not list the name of the doctor defendant was not insufficient for a claim involving the ongoing denial of medical attention. Plaintiffs cite Paryzyck in a conclusive way for the proposition that

10

"[a] prisoner need not name any particular defendant in a grievance in order to properly exhaust his claim." Id. at 1218-19. Defendants complain that Paryzyck is inapposite because it involved a continuous failure to act, not a distinct occurrence, and because it involved Florida law. This Court uses Paryzck as an example of analyzing the exhaustion requirement on a case by case basis in accordance with the policy reasons behind it. Id. at 1219 ("Section 1997e(a)'s exhaustion requirement is designed 'to alert prison officials to a problem, not to provide personal notice to a particular official that he may be sued . . . .'" (quoted sources omitted)).

Defendants also cite Wright v. Langford, 562 F. App'x 769 (11th Cir. 2014), in which the Eleventh Circuit found that a grievance form which omitted the defendant's name did not properly exhaust the prisoner's administrative remedies. The subject grievance form, however, was sparse in that it only stated in relevant part: "My hand is fractured your officer handcuffed me behind my back." Id. at 772. At the summary judgment stage, the district court dismissed the plaintiff's excessive force claim for failure to exhaust upon finding that the grievance was untimely and failed to include not only the officer's name, which was known to the plaintiff at the time of filing the grievance, but also that the officer "handcuffed

him too tightly or jerked him up on the handcuffs." Id. at 776. By contrast, Plaintiffs' grievances in this case provide greater detail.

Finally, the parties discuss the Eleventh Circuit's decision in Toenniges, 600 F. App'x 645. In Toenniges, the court recognized that "[t]he critical function of the grievance process is that it provides the institution with notice of a problem such that they have an opportunity to address the problem internally." Id. at 649. The court concluded that the Georgia prisoner's failure to name a doctor defendant on his grievance form was fatal to his claim because the grievance, filed and grieved *prior to* the doctor's treatment, did not serve the purpose of putting the prison on notice of an ongoing problem with the prisoner's treatment or give the prison an opportunity to address the medical issue. Id. Again, the court's focus was on whether the subject grievance served the purposes of the exhaustion requirement.

In the case at bar, Plaintiffs' grievances describe a distinct incident (identified by date and place) of alleged unlawful beatings of Plaintiffs in the dormitory, in transit to the medical unit, and while in the medical unit. The grievances provide a few names along with the allegation that "numerous" unidentified officers participated in the beatings. It is clear from both grievances that Plaintiffs believed more

than the named officers were involved. There can be no doubt that if the allegations are true, it would be very difficult for an aggressively beaten inmate in such tumultuous circumstances to remember or be aware of every officer who was present and participated in the abuse. It is also noteworthy that the allegations arise out of a prison disturbance that had to be well-known and thoroughly investigated by the prison. Indeed, criminal charges were brought against Plaintiffs for their involvement.

In short, this Court will not hold these particular prisoners under the circumstances of this case to a strict "'name all defendants' requirement" at the pleadings stage because of the instructions on the grievance form. See Jones v. Bock, 549 U.S. at 217. Certainly, the grievances put the prison on notice of potential claims, particularly given the heinous nature of the allegations. Finally, the Court observes that the parties are diligently conducting discovery and represent that they are carefully considering which of the named Defendants should remain in the case. (Joint Status Report, Doc. 174 (listing 15 Defendants that Plaintiffs are prepared to dismiss and stating that "[t]he parties will continue to discuss whether additional Defendants can be dismissed from the case before motions for summary judgment are due to be filed").)

## IV.  CONCLUSION

Upon the foregoing, the Court concludes that Plaintiffs did not fail to exhaust their administrative remedies against Defendants Eason and Attical under the circumstances. Accordingly, the Court **DENIES** Defendants Eason and Attical's motions for judgment on the pleadings.  (Docs. 132 & 134.)

**ORDER ENTERED** at Augusta, Georgia, this 27th day of June, 2017.

J. RANDAL HALL, CHIEF JUDGE
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA